*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0005p.06

FOR YOUR INFORMATION

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JAMES ARNETT,

    *Petitioner-Appellee,*

v.

WANZA JACKSON, Warden,

    *Respondent-Appellant.*

No. 03-4375

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 01-00157—S. Arthur Spiegel, District Judge.

Argued: August 3, 2004

Decided and Filed: January 6, 2005

Before: CLAY and GILMAN, Circuit Judges; MATIA, Chief District Judge.[*]

---

### COUNSEL

**ARGUED:** Douglas R. Cole, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Charles H. Bartlett, Jr., Cincinnati, Ohio, for Appellee. **ON BRIEF:** Douglas R. Cole, Stuart A. Cole, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Charles H. Bartlett, Jr., Cincinnati, Ohio, for Appellee. Mark B. Greenlee, Shaker Heights, Ohio, for Amicus Curiae.

    MATIA, Chief D. J., delivered the opinion of the court, in which GILMAN, J., joined. CLAY, J. (pp. 8-10), delivered a separate dissenting opinion.

---

### OPINION

    PAUL R. MATIA, Chief District Judge. In 1997, Petitioner James Arnett entered guilty pleas in the Common Pleas Court of Hamilton County, Ohio, on ten counts of rape and one count of pandering obscenity involving a minor. He was sentenced to 51 years in prison. In announcing this sentence, the trial court judge addressed the heinous nature of Arnett's conduct and referenced a Biblical passage. Petitioner appealed his sentence to the Ohio Court of Appeals and the Ohio Supreme Court on the basis that the trial court violated his right to due process when it impermissibly considered its own religious beliefs during his sentencing. After exhausting his remedies in the Ohio state courts, Arnett filed a petition for a writ of habeas corpus in

---

[*] The Honorable Paul R. Matia, Chief United States District Judge for the Northern District of Ohio, sitting by designation.

district court. The district court conditionally granted the petition, determining that Arnett's due process rights were violated when the trial court judge referenced the Bible during petitioner's sentencing hearing. For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case with instructions to dismiss Arnett's habeas petition.

## I. BACKGROUND

Between 1995 and 1997, James Arnett repeatedly engaged in the sexual abuse of the daughter of his live-in girlfriend. During that time, Arnett repeatedly forced Rachel to provide him oral sex and admittedly raped her. This abuse began when Rachel was only five years old. As a result of these actions, Arnett was indicted in November 1997 on ten counts of rape of a minor under the age of thirteen, each with a sexually violent predator specification, pursuant to OHIO REV. CODE § 2907.02(A)(1)(b). In January 1998, Arnett was additionally indicted on one count of pandering obscenity involving a minor, a violation of OHIO REV. CODE § 2907.321(A)(5). Arnett entered guilty pleas to all the charges and was sentenced to a prison term of 51 years.[1]

During Arnett's sentencing hearing, the trial court judge addressed defendant's crime and referenced the Bible. This monologue, which is the genesis of Arnett's due process claim, reads in pertinent part:

> Trial Court: So, Mr. Arnett, I was struck by the idea of who is James Arnett through this particular case. And I thought about it all last evening as I was trying to determine in my mind what type of sentence you deserve in this particular case.
>
> * * * * *
>
> Trial Court: I'm looking at the victim's father, who tells me that basically his daughter's innocence was snatched away by you and you're a thief. And, yet, you have been molesting his little girl for the last four years. You've been watching porno tapes with her, you've been taking pictures of her, and you've been downloading information. And he asks me to give you a sentence of 40 years, and he basically said that isn't enough.
>
> * * * * *
>
> Trial Court: But perhaps most telling of all the information is from the mouth of Rachel herself to give me a pretty good picture. And I know from the medical evidence that semen and pubic hair evidence was found, but it's Rachel's description of the sexual contact that are most disturbing.
>
> * * * * *
>
> Trial Court: And Dr. Bassman gives me a bit of a clue. In fact, he said some thoughts that I'm thinking. He tells me that Rachel is wounded. And that's very clear from Rachel herself. And that she is suffering severe trauma. And I'm wondering the same thing the doctor is wondering, how is it that Rachel is going to have the ability to develop a healthy relationship, trust, express love . . . [a]nd basically, Mr. Arnett, you robbed that child of that whole sense of growing up and who she is.

---

[1] Arnett was sentenced to 5 years imprisonment for each rape count, well within the 3-10 year sentencing range for each rape count allowable under Ohio law, and an additional year of imprisonment on the pandering charge, a fourth-degree felony with a potential sentence between 6-18 months.

\* \* \* \* \*

> Trial Court: Recently, Mr. Arnett, I had a murder case of an individual who had no remorse and the sentence was 20 years, and I thought about that in regards to sentencing you. Because I was looking for a source, what do I turn to, to make, to make that determination, what sentence you should get. And I thought in regards to a 20-year sentence, that individual, that victim, who's the victim of that case, at least is gone to their reward, they're not hurting anymore. But for Rachel, the rest of her life, unless she takes care of herself, she's hurting.

\* \* \* \* \*

> Trial Court: And in looking at the final part of my struggle with you, I finally answered my question late at night when I turned to one additional source to help me. And basically, looking at Rachel on one hand, looking at the photographs of you happily as a child, and looking at the photographs of downloading that came from your computer, I agree they're very sad photographs, they're pure filth, it just tells me how ill you are.

\* \* \* \* \*

> Trial Court: And that passage where I had the opportunity to look is Matthew 18:5, 6. "And whoso shall receive one such little child in my name, receiveth me. But, whoso shall offend one of these little ones which believe in me, it were better for him that a millstone were hanged about his neck, and he were drowned in the depth of the sea."

\* \* \* \* \*

> Trial Court: Pandering obscenity count, one year. Ten counts of rape, five years on each, running consecutive. Sentence, 51 years.

(Sent. Tr., JA 644-49)

Arnett appealed his sentence to the Ohio Court of Appeals, claiming that the trial court erred when it impermissibly considered its own religious beliefs during sentencing. The state appellate court vacated Arnett's sentence, concluding that his due process rights were violated by virtue of the trial court "factoring in religion" when imposing its sentence.

Appellee filed a notice of appeal to the Ohio Supreme Court, which accepted jurisdiction and unanimously reversed the judgment of the state appellate court. The Ohio Supreme Court, after noting the lack of Supreme Court precedent with regard to this specific issue, unanimously concluded that the judge's Biblical reference did not violate Arnett's right to due process because it was not the "basis" of the sentencing determination, but rather "one of several reasons" or an "additional source" relied upon by the trial court. *See State v. Arnett*, 724 N.E.2d 793, 803 (Ohio 2000).

On March 15, 2001, Arnett filed a petition for writ of habeas corpus, under 28 U.S.C. § 2254, in district court on the basis that the Ohio Supreme Court unreasonably applied clearly established Supreme Court precedent prohibiting trial courts from using impermissible factors, such as religion, when sentencing

a defendant.[2] The district court referred the case to a magistrate judge and subsequently adopted the judge's report and recommendation, finding that the trial court's use of the Bible as a "final source of authority" constituted an impermissible factor for sentencing. Arnett's habeas petition, therefore, was conditionally granted on the finding of a denial of due process, and he was ordered to be released from prison unless resentenced by the Hamilton County, Ohio Court of Common Pleas. Appellee's timely appeal followed.

## II. ANALYSIS

### A. Standard of Review of Habeas Petitions Under AEDPA

Under the applicable standard of review set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), codified at 28 U.S.C. § 2254(d), a petitioner is not entitled to relief in a federal habeas corpus proceeding unless the state court's adjudication of his or her due process claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

A state court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Furthermore, a federal court may not issue a writ of habeas corpus under the "unreasonable application" clause of 28 U.S.C. § 2254(d) "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 365; *see also Price v. Vincent*, 538 U.S. 634, 638-39 (2003).

In this proceeding, the district court granted Arnett's petition for habeas corpus under the first prong of 28 U.S.C. § 2254(d), concluding that the Ohio Supreme Court's determination that Arnett's right to due process was not violated was both "contrary to" and an "unreasonable application" of Supreme Court precedent. We disagree.

### B. Clearly Established Supreme Court Precedent

In order for this Court to affirm the district court, the prohibition against a trial court judge citing religious text in a sentencing hearing must be "clearly established" by Supreme Court precedent. *Mitchell v. Esparza*, 124 U.S. 7, 9 (2003). Although it is well established that "a fair trial in a fair tribunal is a basic requirement of due process," *In re Murchison*, 349 U.S. 133, 136 (1955), the Supreme Court has never specifically decided whether a defendant's right to due process is violated if a religious text or commentary is cited during a sentencing hearing and/or considered by a trial court in reaching a sentencing determination. Because the Supreme Court has never addressed this issue, we must decide whether the Ohio Supreme Court unreasonably refused to extend a principle derived from the holdings of the Supreme Court to a new context where it should apply. *See Williams v. Taylor*, 529 U.S. at 407 (holding that "a state-court decision . . . involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply"); *see id.* at 409 ("[A] federal habeas

---

[2] Arnett's application for a writ of habeas corpus claimed that the trial court judge violated two constitutional provisions during the sentencing hearing: (1) the right to due process under the Fourteenth Amendment; and (2) the Establishment Clause of the First Amendment. The district court, in adopting the report and recommendation of the magistrate judge, found petitioner's Establishment Clause claim to be procedurally defaulted since it was raised for the first time in the Ohio Supreme Court. The Establishment Clause issue is not on appeal before this Court and will not be addressed.

court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."). Our review of the most relevant Supreme Court decisions reveals that the Ohio Supreme Court's conclusion that no constitutional error occurred at Arnett's sentencing hearing was not "objectively unreasonable." Arnett's writ of habeas corpus, therefore, should not have been granted.

The district court's justification for granting Arnett's habeas petition was largely grounded in *Townsend v. Burke*, 334 U.S. 736 (1949), and *United States v. Tucker*, 404 U.S. 443 (1972), cases which provide the general rule that a violation of due process exists when a sentencing judge relies upon "erroneous information." In *Townsend*, the Supreme Court held that a petitioner's sentence did not satisfy the due process "requirement of fair play" because the trial judge's comments revealed that petitioner was "sentenced on the basis of assumptions concerning his criminal record that were materially untrue." 334 U.S. at 741. Similarly, the Court in *Tucker* granted the petitioner's writ of habeas corpus on finding that the sentencing court erroneously relied upon defendant's three prior felony convictions, two of which were constitutionally invalid, having been obtained in violation of right to counsel. 404 U.S. at 448 ("the real question here is . . . whether the sentence . . . might have been different if the sentencing court [had not relied on improper or erroneous information]"). In the present case, however, the district court did not rely on "factually erroneous information" in sentencing Arnett.

Consistent with these prior decisions, the Court in *Zant v. Stephens*, 462 U.S. 862, 885 (1983), stated that a defendant's right to due process of law is violated if he or she is sentenced to death based on "factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as for example the race, religion, or political affiliation of the defendant[.]" This general prohibition was declared by the Court in its discussion of aggravating factors a jury may properly consider in the sentencing phase of a capital case. In contrast, the trial judge in this proceeding did not base her sentence on an impermissible factor, such as Arnett's religion. Far from being a "totally irrelevant" consideration, the principle embedded in the referenced Biblical passage (of not harming young children) is fully consistent with Ohio's sentencing consideration to the same effect. *See* Ohio Rev. Code § 2929.12(b)(1).

Finally, in a case where the facts are most similar to those presently before us, the Fourth Circuit in *United States v. Bakker*, 925 F.2d 740 (4th Cir. 1991), vacated a sentence after determining that the district court judge's "personal religious principles" were the "basis" of the sentencing decision. In *Bakker*, which concerned the sentencing of a televangelist after convictions for mail and wire fraud, the district court judge made the following statement on the record about the offender: "He had no thought whatever about his victims and *those of us that do have a religion are ridiculed as being saps from money-grubbing preachers or priests*." *Id.* at 740. Upon review, the circuit court vacated the sentence, holding that courts "cannot sanction sentencing procedures that create the perception of the bench as a pulpit from which judges announce their personal sense of religiosity and simultaneously punish defendants for offending it." *Id.* at 740.

In *Bakker*, the Fourth Circuit emphasized that it was vacating the defendant's sentence because the trial judge's comments, which referred to "*those of* us *who do have a religion,*" strongly suggested that the judge's "personal religious principles" had been a decisive factor in the court's sentencing determination. *Id.* at 740-41 (underlined emphasis added). The sentencing judge was plainly incensed that Bakker's conduct had caused the judge, and other pious people like him, to be "ridiculed as saps." *Id.* at 740. (vacating the defendant's sentence because of the trial judge's reliance on "his *own* religious characteristics" and "his *own* sense of religiosity and victimization") (emphases added). The Fourth Circuit did not hold, however, that a judge's reference to a religiously derived, community maxim would by itself compel a defendant's sentence to be vacated. *Id.* at 740 (acknowledging that a judge is not required "to surrender his or her religious beliefs upon the assumption of judicial office"). To the contrary, the court found that "a sentencing judge is the embodiment of public condemnation and social outrage" who may properly "vindicate th[e] community's interests in justice," so long as "we are [not] left with the apprehension that the imposition of

a lengthy prison term . . . may have reflected the fact that the court's own sense of religious propriety had somehow been betrayed." *Id.* at 740-41.

The dissenting opinion in the present case asserts that the sentencing judge relied on her "patently religious beliefs," thereby "suggesting that she was imposing the particular sentence because Arnett had betrayed the word of God." Dissenting Op. at 9 (suggesting also that the judge "imposed the particular sentence on Arnett because the judge believed that God commanded it"). This speculation about the judge's motives, however, has no basis in the record. Far from demonstrating that the judge was motivated by her "own sense of religiosity and victimization," *Bakker*, 925 F.2d at 740, the sentencing transcript in fact reveals that the judge made no reference whatsoever to her own religious beliefs in sentencing Arnett. She instead focused her attention on the harm suffered by Arnett's young victim.

A different characterization of the sentencing judge's comments, which is at least as plausible as that offered by the dissenting opinion, is that the judge cited to the Biblical passage to underscore the contention that our society has a long history of sternly punishing those people who hurt young children. Because the record does not demonstrate that the judge's personally held religious beliefs formed "the basis of [her] sentencing decision," we conclude that Arnett's due process rights were not violated by the judge's Biblical reference at sentencing. *Bakker*, 925 F.2d at 741 (observing that although "a trial judge on occasion will misspeak during sentencing . . . every ill-advised word will not be the basis for reversible error").

Under the AEDPA, this Court "may not look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law." *Doan v. Brigano*, 237 F.3d 722, 729 (6th Cir. 2001)(quotation marks omitted). Lower federal court decisions, however, may be considered "to determine whether a legal principle or right had been clearly established by the Supreme Court" at the time of the Ohio Supreme Court's decision in this case. *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003). *Bakker* cites only one Supreme Court decision on this issue, *Gardner v. Florida*, 430 U.S. 349 (1977).

In *Gardner*, the Supreme Court stated that "the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause." *Id.* at 358. More specifically, *Gardner* holds that the constitutional guarantees of due process prohibit a court from imposing the death penalty based in part on information contained in a presentence report that is not disclosed to the defendant. *Id.* at 362. Nothing in *Gardner*, however, established the legal principle that a trial judge's comments made during a sentencing regarding his or her personal religious beliefs violate a defendant's right to due process. *Bakker* is therefore not determinative of this Court's inquiry concerning the instant case.

### III. CONCLUSION

There is nothing in the totality of the circumstances of Arnett's sentencing to indicate that the trial judge used the Bible as her "final source of authority," as found by the district court. Moreover, the Biblical principle of not harming children is fully consistent with Ohio's sentencing consideration to the same effect. If the trial judge had actually sentenced Arnett based upon a belief that God commanded that he be "drowned in the depth of the sea," we would expect the sentence imposed to be the maximum length possible. In reality, he was sentenced in the lower half of the sentencing range allowable under Ohio law. Under these circumstances, we do not share the dissenting opinion's concern that upholding Arnett's sentence will encourage lawyers to "regularly cit[e] religious sources like the Bible, the Talmud, or the Koran" and that the opinions of judges will "begin to resemble the fatwas of religious clerics." Dissenting Op. at 10.

In addition to the Biblical reference, the judge referred to numerous factors - favorable and unfavorable - that she took into account. And the judge specifically designated the Biblical passage as "one additional source," not her "final source." If, indeed, the question of assigning "weight" to the judge's Biblical reference is "admittedly a close one," as stated by the magistrate's report and recommendation, then it can hardly be said that the decision of the *unanimous* Ohio Supreme Court was "objectively

unreasonable." We reach this conclusion despite the fact that reasonable minds could certainly question the propriety of the trial judge making mention of the Bible at all in her sentencing decision. Accordingly, the judgment of the district court is **REVERSED**, and the case **REMANDED** with instructions to dismiss Arnett's habeas petition.

## DISSENT

CLAY, Circuit Judge, dissenting. I dissent inasmuch as the Ohio Supreme Court identified the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applied that principle to the facts of this case. *See* 28 U.S.C. § 2254(d)(1) (an application for writ of habeas corpus shall not be granted on any claim adjudicated in state court unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"); *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The Ohio Supreme Court's decision also "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). I would affirm the district court's decision granting James Arnett's petition for a writ of habeas corpus for the limited purpose of resentencing him in conformance with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

The Ohio Supreme Court correctly acknowledged that "[t]he United States Supreme Court has recognized that even a sentence within the limits of a state's sentencing laws may violate due process if the sentencing proceedings are fundamentally unfair." *State v. Arnett*, 724 N.E.2d 793, 801 (Ohio 2000) (citing *Gardner v. Florida*, 430 U.S. 349 (1977); *Townsend v. Burke*, 334 U.S. 736 (1948)); *see also United States v. Bakker*, 925 F.2d 728, 740 (4th Cir. 1991) ("Sentencing discretion ... must be exercised within the boundaries of due process.") (citations omitted). Thus, the Supreme Court has observed that a sentencing court may not base its decision on "factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as for example the race, religion, or political affiliation of the defendant." *Zant v. Stephens*, 462 U.S. 862, 885 (1983).

Before pronouncing Arnett's sentence, the trial judge explained that, the previous evening, she had been "trying to determine in [her] mind what type of sentence [Arnett] deserve[d] in this particular case." After detailing several different sources from which to make her decision (the physical and photographic evidence, as well as submissions from the victim, the victim's family, a psychologist, Arnett's friends, and employer), the judge explained to Arnett that she was still "looking for a source ... to make that determination, what sentence you should get." She noted that the victim's father had requested a sentence of forty years, whereas another individual had requested that Arnett be sentenced only to a long term of probation. The trial judge professed that she could not answer the question "what sentence?" based solely on this information; that is, until she "answered [her] question late at night when [she] turned to one additional source to help [her]." According to the judge, the source that answered her question was a provision of the New Testament (Matthew 18:5, 6), which reads: "'And whoso shall receive one such little child in my name, receiveth me. But, whoso shall offend one of these little ones which believe in me, it were better for him that a millstone were hanged about his neck, and that he were drowned in the depth of the sea.'"

The judge's statements at sentencing undeniably show that this biblical tract played a significant, determinative role in Arnett's sentence. She explained that the biblical passage from Matthew, which purports to be the word of God, enabled her to resolve "the final part of her struggle" to determine Arnett's sentence. Accordingly, the district court below correctly determined that the trial judge used the Bible as her "final source of authority."

In *Bakker*, *supra*, the Fourth Circuit held that a sentencing judge had violated due process when sentencing a television evangelist for fraud because, at sentencing, the judge had commented that the defendant "had no thought whatever about his victims and *those of us who do have a religion are ridiculed as being saps from money-grabbing preachers or priests.*" *Bakker*, 925 F.2d at 740 (emphasis in original). The court held that the statement by the sentencing judge "reflected the fact that the court's own sense of

religious propriety had somehow been betrayed." *Bakker*, 925 F.2d at 741. Arnett's trial judge conveyed the identical message when she linked her sentencing decision so directly with the Bible, suggesting that she was imposing the particular sentence because Arnett had betrayed the word of God.

Attempting to distinguish *Bakker*, where the sentencing judge explicitly referenced his religious nature, the majority gives a crabbed reading of Arnett's sentencing transcript and concludes that "the judge made no reference whatsoever to her own religious beliefs in sentencing Arnett." As a matter of common sense, the judge would not have elaborated about her internal struggle to determine Arnett's sentence and explained that she found her answer in the Bible unless she believed that the Bible carries special significance as a source of moral authority. Indeed, a prior statement by the judge strongly suggests that her biblical quotation sprang from her personal sense of religiosity. Shortly before quoting the Bible, the judge referred to a 20-year sentence that she had imposed in a murder case. The judge stated that she believed the 20-year sentence was appropriate because the victim had "gone to their reward" and, therefore, was not hurting any more. No great inferential leap is required to conclude that the judge felt comfortable with a 20-year sentence because of her belief that the murder victim has an eternal soul that now resides in an afterlife. These are patently religious beliefs. Thus, the judge's subsequent biblical reference was a natural extension of the religiosity she had betrayed earlier in the sentencing hearing. Moreover, the judge's above-quoted words utterly disprove the majority's assertion that the dissent is "speculat[ing] about the judge's motives." The record speaks for itself.

The majority minimizes the judge's biblical quotation as merely an attempt to underscore the contention that "our society has a long history of sternly punishing those people who hurt young children." Similarly, the Ohio Supreme Court attempted to explain away the trial judge's blatantly religion-based decision by opining that "the text of the biblical verse that the judge cited ... reflects the general proposition that offenses against young victims are especially serious – a principle that the General Assembly explicitly recognized in [OH. REV. CODE §] 2929.12(B)(1) [(requiring sentencing court to consider whether the injury was exacerbated due to the victim's age)]." *Arnett*, 724 N.E.2d at 803. Both conclusions are wrong.

Certainly, society is especially concerned about crimes against children, but the *means* whereby the trial judge purportedly made this point was by utilizing a source which has decision-making significance only for that segment of "our society" who believe that the Bible's words are divinely inspired. The judge's explicit reliance on the Bible conveyed the message that Arnett's punishment was, at least in part, a decisional by-product of religious beliefs that Arnett may not share. Further, section 2929.12(B)(1) of the Ohio Revised Code is in no way a secular codification of Matthew 18:5, 6, as the Ohio Supreme Court suggested. The biblical passage literally expresses concern over "little ones *which believe in me*" – i.e., children who believe in a particular God as set forth by a particular biblical source – and prescribes the penalty for offending those children as death by drowning. By contrast, the Ohio Revised Code does not, and could not, permit a sentencing court to consider the victim's religious beliefs, nor does it or could it prescribe a drowning death for Arnett's crimes. Even if the biblical passage is interpreted less literally, as simply prescribing harsh punishments for those who injure children, the fact remains that the judge's heavy reliance on the passage creates the appearance that the she imposed the particular sentence on Arnett because the judge believed that God commanded it.

Ultimately, the judge's reliance, or lack thereof, on her personal religious beliefs is not critical to the due process question in this case. In principle, there is nothing wrong with a judge indirectly drawing upon her firmly-held religious beliefs for moral guidance in resolving a case for which the legal precedents provide no clear answer (such as a criminal sentence in an indeterminate sentencing scheme), just as an a-religious judge similarly might draw upon his or her firmly-held secular beliefs. *Cf. Bakker*, 925 F.2d at 740 ("Our Constitution, of course, does not require a person to surrender his or her religious beliefs upon the assumption of judicial office."). When, however, a judge directly and publicly relies on a religious source to reach a specific legal result, she flouts a defendant's fundamental expectation that he will not be adjudged according to *any* religious tenets, regardless of whether the sentencing judge herself adheres to those tenets.

If the Constitution sanctions such direct reliance on religious sources when imposing criminal sentences, then there is nothing to stop prosecutors and criminal defense lawyers from regularly citing religious sources like the Bible, the Talmud, or the Koran to justify their respective positions on punishment. The judge would be placed in the position of not only considering statutory sentencing factors, but also deciding which religious texts best justify a particular sentence. Under this approach, the judgments of trial courts could begin to resemble the fatwas of religious clerics, and the opinions of appellate courts echo the proclamations of the Sanhedrin. The result would be "sentencing procedures that create the perception of the bench as a pulpit for which judges announce their personal sense of religiosity." *Id.*

Inevitably, judges would apply the same religious texts to reach different sentences, or rely on different religious texts to justify different sentences, in cases with materially indistinguishable facts. The Constitution, however, does not vest the judicial branch with the authority to resolve such conflicts. *See Serbian E. Orthodox Diocese for United States of Am. & Canada v. Milivojevich*, 426 U.S. 696, 713 (1976) (noting "the general rule that religious controversies are not the proper subject of civil court inquiry"); *Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what *the law* is.") (emphasis added). A judge's assumption of such authority is not only fundamentally unfair to defendants, who expect to be sentenced without regard to religious considerations, but also erodes the "wall of separation between church and State." *Reynolds v. United States*, 98 U.S. 145, 164 (1878).

Finally, the fact that the trial judge sentenced Arnett to less than the statutory maximum for his crimes in no way demonstrates that the judge's reliance on the Bible did not prejudice him. It is possible that the judge would have sentenced Arnett to a lesser term of years had she not been so heavily influenced by a provision of the Bible that advocates death by drowning for those who "offend ... little ones." More fundamentally, the Constitution entitled Arnett to a sentencing procedure free of religious influences. The appropriate procedure when an unconstitutional factor contributed to a sentence that is within the statutory sentencing range is not to conclude that the defendant is fortunate that he did not receive a harsher sentence, but to vacate the sentence and order that the defendant be re-sentenced. *Cf. United States v. Onwuemene*, 933 F.2d 650, 652 (8th Cir. 1991) (vacating sentence that was within sentencing guidelines range and remanding for new sentence after holding that the sentencing court had relied on an unconstitutional consideration, the defendant's national origin); *see also United States v. Guidry*, 199 F.3d 1150, 1161 (10th Cir. 1999) (observing that a sentencing court's refusal to grant a downward departure based on an unlawful consideration, such as the defendant's race, would require a remand for resentencing).

For the foregoing reasons, I would hold that the Ohio Supreme Court unreasonably determined that Arnett's trial judge did not accord constitutionally significant weight to the biblical passage that she cited as support for his sentence. I further would hold that the court unreasonably failed to hold that the trial judge violated Arnett's right to due process by explicitly and directly relying on a religious source to determine his specific sentence. I would grant the habeas petition and direct the Ohio courts to impose a sentence on Arnett (preferably by a different judge) that does not depend upon religious sources or considerations.